IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL ACTION |
| v. | 1:13-cr-18-TWT-GGB |
| PATRICK RANDELL McINTOSH, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

This action is before the Court on Defendant Patrick Randell McIntosh's motion to sever the counts of his indictment as improperly joined and unduly prejudicial, (Doc. 75), and motion dismiss Count Four of his indictment, (Doc. 103, as supplemented by Doc. 116). For the reasons discussed herein, I **RECOMMEND** that Defendant's motion to sever be **DENIED**, and his motion to dismiss Count Four of the indictment be **GRANTED**.

**I.   The motion to sever**

Defendant is charged in a four count second superseding indictment with receipt of firearms while under indictment for felony offense in violation of 18 U.S.C. §922(n) (Count One), threatening the President in violation of 18 U.S.C. §871 (Count Two), threatening law enforcement officers in violation of 18 U.S.C. §115(a)(1)(B) (Count Three), and transmitting a threat in interstate commerce in

AO 72A
(Rev.8/82)

violation of 18 U.S.C. §875(c) (Count Four). (Doc. 106). Defendant argues that Counts One and Two in the second superseding indictment should be severed from each other as improperly joined under Fed. R. Crim. P. 8(a). He concedes that Counts One, Three, and Four[1] are properly joined under Rule 8(a) but argues that Counts Three and Four in the second superseding indictment should be severed from Count One due to prejudice under Fed. R. Crim. P. 14. (Doc. 75).

Rule 8(a) provides:

> Joinder of offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

This circuit construes Rule 8(a) broadly in favor of initial joinder. See e.g., United States v. Smalley, 754 F.2d 944, 946 (11th Cir. 1985).

Defendant's alleged unlawful receipt of firearms (as charged in Count One) occurred during the same time period that he allegedly threatened to kill the President (as charged in Count Two). The government proffers that the gun

---

[1] As discussed below, I am recommending that Count Four be dismissed. However, I am writing this recommendation as if Count Four remained in the case. The same analysis applies even if Count Four is dismissed, as Defendant would still be requesting a severance of Counts One and Three.

2

purchase and the threat to kill the president were within two to three weeks of each other. (Doc. 83, p. 4). The government intends to argue that the alleged crimes are related, and given the nature of the charges and the timing, such an argument is plausible. Thus, the evidence on Counts One and Two will likely overlap. Accordingly, the two offenses are sufficiently related so as to be based on the same transaction. See United States v. Woody, 55 F.3d 1257, 1267 (7th Cir. 1995) (ruling that two counts of forcible assault were properly joined with a single count of possession of stolen mail; noting that the word "transaction," as used in Rule 8(a), is flexible and the court should be guided by the extent of evidentiary overlap); United States v. Dominguez, 226 F.3d 1235, 1239 (11th Cir. 2000)(holding that joinder was proper where the defendant was charged with mortgage fraud related charges and cocaine distribution charges, and proof of one charge provided the motive for the other charge).

Defendant also argues that Count Two should be severed from Counts Three and Four under Fed. R. Crim. P. 14 which allows relief from prejudicial joinder in the discretion of the court. Defendant argues that if those counts were tried together, he will suffer prejudice because the evidence on Counts Three and Four

AO 72A
(Rev.8/82)

will reveal that he was in pre-trial custody for the crime charged in Count Two at the time of the alleged threats charged in Counts Three and Four.

Fed. R. Crim. P. 14 allows relief from prejudicial joinder in the discretion of the court.  However, any potential prejudice from the jury learning that Defendant was in pre-trial custody can be cured by careful instructions from the court.  Juries are presumed to follow the court's instruction.  <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).  Moreover, even if Defendant was tried separately on Counts Three and Four, the jury would learn in that trial that Defendant was in custody at the time of those alleged threats.  Therefore, little would be gained by a separate trial.  For these reasons, Defendant's Motion to Sever Counts should be denied.

**II.    The motion to dismiss Count Four**

    **A.    Background**

        **1.    The first superseding indictment**

In January 2015, the government charged McIntosh via a superseding indictment with, <u>inter alia</u>, transmitting a communication containing a true threat to injure, in violation of 18 U.S.C. § 875(c).  The language of Count Four of the indictment read:

> On or about September 26, 2014, in the Northern District of Georgia, the defendant, PATRICK RANDELL MCINTOSH, did knowingly transmit

and cause to be transmitted, in interstate commerce, a communication containing a true threat to injure the person of Randall McIntosh and Lauren Hagan Wade, in violation of Title 18, United States Code, Section 875(c).

(Doc. 66 at 3).

McIntosh moved to dismiss Count Four of the superseding indictment. (Doc. 103). He based his argument on a recent Supreme Court case, which held that an § 875(c) conviction required proof of a defendant's intent to threaten the victim, Elonis v. United States, 575 U.S. ___, 135 S. Ct. 2001, 192 L.Ed. 2d 1 (2015), and an Eleventh Circuit case, based on Elonis, which held that an indictment that did not allege that the defendant held the subjective intent to threaten was insufficient, United States v. Martinez, 800 F.3d 1293 (11th Cir. 2015). (Id. at 1-3).

### 2. The second superseding indictment

After McIntosh's motion, the grand jury returned a second superseding indictment against McIntosh. (Doc. 106). The second superseding indictment made the same charges, but changed the language of Count Four. The new Count Four reads:

> On or about September 26, 2014, in the Northern District of Georgia, the defendant, PATRICK RANDELL MCINTOSH, did purposely and knowingly transmit and cause to be transmitted, in interstate commerce, a communication containing a true threat to injure the person of Randall

5

AO 72A
(Rev.8/82)

>McIntosh and Lauren Hagan Wade, in violation of Title 18, United States Code, Section 875(c).

(Doc. 106 at 3). The second superseding indictment only changed the mens rea element from the superseding indictment. It replaced "knowingly," with "purposely and knowingly." (Compare Doc. 66 at 3, with Doc. 106 at 3).

### 3. Arguments on the instant motion

Following the second superseding indictment, McIntosh has supplemented his motion to dismiss Count Four of the indictment. (Doc. 116). He maintains that the indictment is still insufficient. He argues that the amendment to the second superseding indictment still does not make an allegation regarding McIntosh's subjective intent in sending the communication. (Id. at 3). He suggests that the amendment only added an allegation that McIntosh purposely transmitted the threat, not that he intended it to be threatening. (Id.).

The government responds that the inclusion of the word "purposely" in the indictment sufficiently alleges that McIntosh subjectively intended to send a threatening communication. (Doc. 119 at 1). It argues that the indictment, properly read, alleges that McIntosh sent a communication for the purpose of sending a communication containing a threat, satisfying the required mens rea. (Id. at 3). The government continues that Martinez was remanded because it failed to allege a

6

subjective <u>mens</u> <u>rea</u> with regard to the threatening nature of the e-mail in question, and that the inclusion of "purposely" in the indictment avoids the same defect. (<u>Id.</u> at 4). The government cites to the Model Penal Code's definition of "purposely" to support its argument. (<u>Id.</u>).

### B. Pertinent legal standards

#### 1. Sufficiency of an indictment

A charging indictment must set forth the essential elements of the offense charged. <u>United States v. Fern</u>, 155 F.3d 1318, 1324-25 (11th Cir. 1998). This ensures that a prosecution meets (1) the Sixth Amendment requirement that the Defendant be put on notice of the nature and cause of the accusation against him and (2) the Fifth Amendment requirement that a grand jury only return an indictment where it finds probable cause to support all necessary elements of the crime. <u>Id.</u> at 1325. Where an indictment fails to contain sufficient allegations to charge the essential elements of an offense, the proper remedy is dismissal of the defective counts under Fed. R. Crim. P. 12(b). <u>United States v. deVegter</u>, 198 F.3d 1324, 1326-27 (11th Cir. 1999).

A reference to the statute (or a tracking of its language) on which an offense is based can adequately inform the defendant of the nature of the charge against

7

him.  Fern, 155 F.3d at 1325.  However, for reference to or tracking of the statute to be sufficient, the statute must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974).

### 2. Mens rea requirements for a § 875(c) offense

In Elonis, the defendant challenged his conviction under § 875(c) based on the court's instruction to the jury that Elonis could be convicted if it found that he "intentionally ma[de] a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted" as a threat of injury or death.  575 U.S. at ___, 135 S.Ct. at 2007.  Elonis argued that the jury should have been instructed that he intended his communications to be threatening.  Id.  The Supreme Court agreed with Elonis.  It held that it was not enough to prove that a reasonable person would view the communication in question as a threat — rather, it was an essential element of the offense that there be some level of proof that the defendant intended or understood the communication as a threat.  Id. at ___, 135 S.Ct. at 2012.  While the Supreme Court did not explicitly define the minimum mens rea required to make out an § 875(c) offense, it stated,

8

"There is no dispute that the mental state requirement in [§] 875(c) is satisfied if the defendant transmits a communication *for the purpose of* issuing a threat, *or with knowledge that* the communication will be viewed as a threat." Id. (emphasis added).

Following Elonis, the Eleventh Circuit took up a challenge to the sufficiency of an indictment under § 875(c). The indictment in that case had charged:

> On or about November 10, 2010, in Broward County, in the Southern District of Florida, and elsewhere [Martinez] did knowingly transmit in interstate commerce a communication, that is an email form response, to WFTL Radio, which communication contained a treat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

Martinez, 800 F.3d at 1294. The defendant in that case, Martinez, argued that the indictment failed to allege that she subjectively intended to convey a threat to injure others. Id. The Eleventh Circuit agreed, holding that the indictment failed to allege a mens rea "with regard to the threatening nature of her e-mail," but rather alleged "only that a reasonable person would regard Martinez's communication as a threat." Id. at 1295.

**C.   Discussion**

While neither party argues this point, I first point out that the second superseding indictment's reference to the charged statute does not render the charge

9

in this case sufficient.  The entire reason for the <u>Elonis</u> case was that the language of § 875(c) does not make the <u>mens rea</u> element clear.  Therefore, reference to the statute did not put McIntosh or the grand jury on notice of the essential <u>mens rea</u> element.  <u>See</u> <u>Hamling</u>, 418 U.S. at 117.

The government was correct to obtain a second superseding indictment following <u>Elonis</u> and <u>Martinez</u>.  The language of the first superseding indictment here essentially tracked the language at issue in <u>Martinez</u>.  <u>See</u> 800 F.3d at 1294; (Doc. 66 at 3).  However, the amendment made — placing the word "purposely" next to the word "knowingly"— did not correct the defect in the indictment.

The <u>Elonis</u> opinion made clear that either purpose or knowledge would be a sufficient <u>mens rea</u> for an § 875(c) offense.  575 U.S. at ___, 135 S.Ct. at 2012.  Nevertheless, the indictment in <u>Martinez</u>, despite alleging knowledge, was insufficient because, as charged, the knowledge requirement applied only to Martinez having sent the message and was not with regard to the threatening nature of the message.  800 F.3d at 1295.  Therefore, the problem with the <u>Martinez</u> indictment was not its reliance on a <u>mens rea</u> of knowledge, but the positioning of the <u>mens rea</u> in the language of the charge.

10

As with <u>Martinez</u>, the problem with the indictments (superseding and second superseding) in the instant case is not the <u>mens rea</u> alleged, but the manner in which it is alleged. Knowledge, if properly stated in the indictment to apply to the nature of the communication, would have been a sufficient <u>mens rea</u>. The government's argument that "purposely" is the highest level of culpability that can be charged, (<u>see</u> Doc. 119 at 4), therefore, is irrelevant.[2]

In inserting the word "purposely" next to "knowingly," the government merely (and unnecessarily) increased the <u>mens rea</u> attached to the allegation that McIntosh sent the communication in question. Accepting <u>Martinez</u>'s holding that the indictment in that case failed to allege knowledge as to the nature of the communication, the operative indictment here still makes no allegation concerning McIntosh's awareness of the threatening nature of the communication. Therefore, the indictment does not make clear that the grand jury found probable cause that McIntosh intended or was aware of the threatening nature of his communication.

---

[2] I also note that, while the government is correct that the Model Penal Code defines "purposely" as the highest level of mental culpability, the commentary to the Model Penal Code makes clear that there is a narrow distinction between the levels of culpability required for purpose and for knowledge. <u>See</u> Model Penal Code § 2.02; Model Penal Code Commentaries Part 1, § 2.02 at 233-34.

Accordingly, Count Four of the second superseding indictment fails to state an offense and is due to be dismissed.

### III. Conclusion

In light of the above, I make the following **RECOMMENDATIONS**. McIntosh's motion to sever counts, (Doc. 75), should be **DENIED**. His motion to dismiss Count Four of the indictment, (Doc. 103), should be **GRANTED**.

**IT IS SO RECOMMENDED** this 6th day of January, 2016.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE